Howard Marc Spector
TBA #00785023
Spector & Johnson PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380
EMAIL: hspector@spectorjohnson.com

COUNSEL FOR GARY R. GRIFFITH

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | |
| | § | Case No. 13-33404-HDH-11 |
| Gary R. Griffith | § | |
| | § | |
| Debtor. | § | (Chapter 11) |

---

## DISCLOSURE STATEMENT
## WITH RESPECT TO DEBTOR'S
## SECOND AMENDED PLAN OF REORGANIZATION
Dated: June 10, 2014
Winnsboro, Texas

---

## ARTICLE I
## INTRODUCTION

I.1     *Preliminary Statement.*

On the Petition Date, Gary R. Griffith (hereinafter, the "**Debtor**") filed his voluntary petition under title 11, chapter 7 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Court**"). On August 13, 2013, an order was entered converting the Case to a case under Chapter 11 of the Bankruptcy Code. The case has been pending since the Petition Date before the Honorable Harlin D. Hale, United States Bankruptcy Judge.

The Debtor is currently operating as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. This Disclosure Statement is submitted by the Debtor pursuant to section 1125 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3017 in connection with the Debtor's Second Amended Plan of

Reorganization dated May 28, 2014 (the "**Plan**"). A copy of the Plan is attached to this Disclosure Statement as "**Exhibit A.**" For purposes hereof, any term used in this Disclosure Statement (regardless of capitalization), and not otherwise separately defined herein, shall have the defined meaning ascribed to it in the Plan or in section 101 of the Bankruptcy Code.

On May 30, 2014, after notice and a hearing, the Court approved this Disclosure Statement as containing information of a kind and in sufficient detail adequate to enable a hypothetical, reasonable investor typical of the classes of claimants entitled to vote pursuant to the Plan to make an informed judgment on whether to accept or reject the Plan. APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

OTHER THAN THIS DISCLOSURE STATEMENT, NO STATEMENT OR INFORMATION GIVEN FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN HAS BEEN APPROVED BY THE BANKRUPTCY COURT CONCERNING (1) THE DEBTOR AND HIS ASSETS OR PROPERTY; (2) THE REORGANIZED DEBTOR; OR (3) DISTRIBUTIONS TO BE MADE UNDER THE PLAN THAT IS AUTHORIZED. ANY ADDITIONAL REPRESENTATIONS OR INDUCEMENTS MADE TO YOU BY ANY PARTY OTHER THAN THE DEBTOR, OR HIS PROFESSIONALS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, HOWARD MARC SPECTOR, 12770 COIT ROAD, SUITE 1100, DALLAS, TEXAS 75251; PH. (214) 365-5377.

THE STATEMENTS AND THE FINANCIAL INFORMATION ABOUT THE DEBTOR AND/OR THE REORGANIZED DEBTOR, INCLUDING ALL FINANCIAL PROJECTIONS AND INFORMATION REGARDING CLAIMS CONTAINED HEREIN, HAVE BEEN PREPARED FROM THE DEBTOR'S BOOKS AND RECORDS. WHILE THE DEBTOR BELIEVES THE INFORMATION TO BE ACCURATE AND COMPLETE, THE DEBTOR AND HIS PROFESSIONALS HAVE NOT TAKEN ANY INDEPENDENT ACTION TO VERIFY THE ACCURACY OR COMPLETENESS OF SUCH STATEMENTS AND INFORMATION AND EXPRESSLY DISCLAIM ANY REPRESENTATION CONCERNING THE ACCURACY OR COMPLETENESS THEREOF. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THIS DISCLOSURE STATEMENT CONTAINS PROJECTED FINANCIAL INFORMATION REGARDING THE DEBTOR AND THE REORGANIZED DEBTOR AND CERTAIN OTHER FORWARD–LOOKING STATEMENTS, ALL OF WHICH ARE BASED ON VARIOUS ASSUMPTIONS AND ESTIMATES AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF. SUCH INFORMATION AND

STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT RISKS INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD–LOOKING STATEMENTS.

### I.2    *Purpose of Disclosure Statement.*

The purpose of this Disclosure Statement is to provide sufficient information about the Debtor to enable the holders of impaired claims against the Debtor to make an informed decision with respect to acceptance or rejection of the Plan. This Disclosure Statement should be read in its entirety prior to voting on the Plan. Each creditor or other party in interest is urged to carefully consider the Plan and this Disclosure Statement in their entirety and to consult legal or other counsel, if necessary, to understand the Plan and its effects, including possible tax consequences, before voting on the Plan.

### I.3    *Explanation of Chapter 11*

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Upon the commencement of a chapter 11 case, or a case under any other chapter, section 362 of the Bankruptcy Code provides for an automatic stay of all attempts to collect upon claims against a debtor that arose prior to the bankruptcy filing. Generally speaking, the automatic stay prohibits interference with a debtor's property or business.

Under chapter 11, a debtor attempts to reorganize for the benefit of the debtor and its creditors. A plan of reorganization sets forth the means for satisfying all claims against a debtor. Generally, a claim against a debtor arises from a normal debtor/creditor transaction, such as a promissory note or a trade credit relationship, but may also arise from other contractual arrangements or from alleged torts.

After a plan of reorganization has been filed with a bankruptcy court, it must be accepted by holders of impaired claims against the debtor. Section 1125 of the Bankruptcy Code requires that a plan proponent fully disclose sufficient information about the debtor, its assets and the plan of reorganization to creditors before acceptances of that plan may be solicited. This Disclosure Statement is being provided to the holders of claims against the Debtor to satisfy such requirements of section 1125 of the Bankruptcy Code.

The Bankruptcy Code provides that creditors are to be grouped into "classes" under a plan and that they are to vote to accept or reject a plan by class. While courts have disagreed on the proper method to be used in classifying creditors, a general rule of thumb is that creditors with similar legal rights are placed together in the same class.

For example, all creditors entitled to priority under the Bankruptcy Code might be placed in one class, while all creditors holding subordinated unsecured claims might be placed in a separate class. Generally, each secured creditor will be placed in a class by itself because each such creditor usually has a lien on distinct property and therefore has distinct legal rights.

The Bankruptcy Code does not require that each claimant vote in favor of the Plan for the Court to confirm the Plan. Rather, the Plan must be accepted by each class of claimants (subject to an exception discussed below). A class of claimants accepts the Plan if, of the claimants in the class who actually vote on the Plan, such claimants holding at least two-thirds in dollar amount and more than one-half in number of allowed claims vote to accept the Plan. For example, if a hypothetical class has ten creditors that vote and the total dollar amount of those ten creditors' claims is $1,000,000, then for such class to have accepted the Plan, six or more of those creditors must have voted to accept the Plan (a simple majority), and the claims of the creditors voting to accept the Plan must total at least $666,667 (a two-thirds majority).

The Court may confirm the Plan even though fewer than all classes of claims vote to accept the Plan. In this instance, the Plan must be accepted by at least one "impaired" class of claims, without including any acceptance of the Plan by an insider. Section 1124 of the Bankruptcy Code defines "impairment" and generally provides that a claim as to which legal, equitable or contractual rights are altered under a plan is deemed to be "impaired." Under the Plan, Classes 1 through 12 are impaired. The Plan impairs all Classes of creditors in an effort to (a) implement a Plan which is fair and equitable to all creditors and does not discriminate unfairly between the impairment of various creditors; (b) devote the Debtor's disposable income to repayment of creditors' claims so that creditors can be treated as favorably as possible under the circumstances.

If all impaired classes of claims under the Plan do not vote to accept the Plan, the Debtor is entitled to request that the Court confirm the Plan pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. These "cramdown" provisions permit the plan to be confirmed over the dissenting votes of classes of claims if at least one impaired class of claims votes to accept the Plan and the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to each impaired, dissenting class of claims.

Independent of the acceptance of the Plan as described above, to confirm the Plan, the Court must determine that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.

THE DEBTOR BELIEVES THAT THE PLAN SATISFIES EACH OF THE CONFIRMATION REQUIREMENTS OF SECTION 1129(a) AND, IF NECESSARY, SECTION 1129(b) OF THE BANKRUPTCY CODE.

Confirmation of the Plan makes the Plan binding upon the Debtor, the Reorganized Debtor, Creditors, and other parties in interest irrespective of whether they have filed proofs of claim or voted to accept the Plan.

### I.4  *Procedure for Filing Proofs of Claim*

#### A.  *Bar Date for Filing of All Proofs of Claim (Other Than Administrative Claims).*

To participate in the payments and other distributions under the Plan, a creditor must have an allowed claim against the Debtor. The first step in obtaining an allowed claim or an allowed interest is generally filing a proof of claim. A proof of claim is deemed filed for any claim that appears in the Schedules which were filed in the Case, except a claim that is scheduled as disputed, contingent, unliquidated or in an unknown amount. In other words, if a creditor agrees with the amount of the claim as scheduled by the Debtor, and that claim is not listed in the Schedules as being disputed, contingent or unliquidated, it is not necessary that a separate proof of claim be filed. Claims that are unscheduled, or which are scheduled as disputed, contingent, or unliquidated, or which are scheduled in an amount that varies from the amount claimed by the creditor shall be recognized and allowed only if a proof of claim was timely filed. *The Bar Date was December 9, 2013 for claims other than those of governmental authorities.* The Bar Date for governmental authorities to file claims was February 7, 2014.

#### B.  *Executory Contracts and Unexpired Leases*

A party to an executory contract or lease that is rejected by the Debtor under the Plan must file any claim for damages resulting from such rejection on or before sixty (60) days following the Effective Date.

#### C.  *Voting Procedures and Requirements*

##### 1.  *Persons Entitled to Vote*

The Debtor is soliciting acceptances of the Plan from the holders of claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 10, 11 and 12 since such classes are impaired under the Plan and are receiving distributions under the Plan. Any claim as to which an objection is filed before voting has commenced is not entitled to vote, unless the Court, upon application or motion of the holder whose claim has been objected to, temporarily allows the claim in an amount that the Court deems proper for the purpose of voting to accept or reject the Plan. A vote may be disregarded or disallowed if the Court determines that it was not solicited, voted or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

### 2. *Voting Instructions*

#### a. *Ballots*

IT IS IMPORTANT THAT CREDITORS EXERCISE THEIR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN. All known creditors entitled to vote on the Plan have been sent a ballot, together with instructions for voting, with this Disclosure Statement. Creditors should read the ballot carefully and follow the instructions contained therein. In voting for or against the Plan, use only the ballot or ballots sent with this Disclosure Statement.

#### b. *Returning Ballots*

THE VOTING DEADLINE IS JULY 18, 2014 @ 4:30 P.M., CENTRAL TIME. ALL BALLOTS MUST BE RETURNED SO THAT THEY ARE *RECEIVED* BY THE BALLOTING AGENT PRIOR TO THE VOTING DEADLINE.

THE NAME AND ADDRESS OF THE BALLOTING AGENT IS SET FORTH ON THE BALLOT.

### 3. *Incomplete or Irregular Ballots*

Incomplete or irregular ballots shall not be counted, unless the Court orders otherwise.

### 4. *Ballot Retention*

Original ballots will be retained by the Debtor for six months following the Confirmation Date and then may be destroyed without further notice.

### 5. *Approval of Disclosure Statement*

On May 30, 2014, the Court approved this Disclosure Statement as containing adequate information in accordance with section 1125 of the Bankruptcy Code. A copy of the "Order (A) Approving Disclosure Statement; (B) Prescribing and Approving the Notice and Solicitation of Votes; and (C) Fixing Related Deadlines" is included with the package containing the Disclosure Statement.

### 6.    *Confirmation Hearing*

The Court has set a hearing on confirmation of the Plan for **July 29, 2014 at 9:00 a.m.**, Central Time in the courtroom of the Honorable Harlin D. Hale, United States Bankruptcy Judge for the Northern District of Texas, Dallas Division, 1100 Commerce Street, 14th Floor, Dallas, Texas 75242. The confirmation hearing may be adjourned by the Court from time to time without further notice except for an announcement made in open court at the confirmation hearing or any continued hearing thereon.

### 7.    *Objections*

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object, in writing, to confirmation of a plan of reorganization. Written objections to confirmation of the Plan, if any, must be filed with the Court *and* a copy of such written objections must be *actually* received by counsel for the Debtor at the following address on or before 4:30 p.m, Central Time, on **July 18, 2014**:

<div align="center">

HOWARD MARC SPECTOR
SPECTOR & JOHNSON PLLC
12770 COIT ROAD
SUITE 1100
DALLAS, TEXAS 75251

</div>

**OBJECTIONS NOT TIMELY FILED AND *ACTUALLY RECEIVED* BY DEBTOR'S COUNSEL AT THE ABOVE ADDRESS WILL NOT BE CONSIDERED BY THE COURT.**

<div align="center">

**ARTICLE II**
**GENERAL INFORMATION ABOUT THE DEBTOR AND THE BANKRUPTCY CASE**

</div>

The Debtor is employed at a salary of $13,000.00 per month, which commenced in January 2014. The Debtor also earns approximately $4,750.00 per month, on average, from farming operations. The Debtor's receipts and expenses are reflected in **"Exhibit B."** Through the Plan, the Debtor intends repay creditors as proposed in the Plan.

The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The filing was necessitated by the amount of unsecured debt accumulated by the Debtor, an interruption in the Debtor's income due to the Debtor's illness, and delinquencies on his secured debts. The meeting of creditors pursuant to Section 341 of the Bankruptcy Code during the Chapter 7 Case was not held. After the conversion of the Debtor's Case to a case under Chapter 11 of the Bankruptcy Code, the meeting of creditors pursuant to Section 341 of the Bankruptcy Code was held on September 10, 2013. The law firm of Spector & Johnson PLLC has been retained to act as counsel to the Debtor in the Case.

## ARTICLE III
## ASSETS AND LIABILITIES OF THE DEBTOR

The assets of the Debtor as of the Petition Date are set forth in the Schedules which reflect that as of the Petition Date, the Debtor had less than $56,000.00 of non-Exempt Property. There have been no material changes to the assets of the Debtor since the Petition Date. The approximate amounts of the Claims estimated by the Debtor or set forth in filed Proofs of Claim in each class are set forth below:

| Class | Amount |
|-------|--------|
| 1 | $5,518 |
| 2 | $1,052,719 |
| 3 | $19,100 |
| 4 | $37,500 |
| 5 | $32,400 |
| 6 | $27,000 |
| 7 | $36,000 |
| 8 | $96,586 |
| 9 | $372,929 |
| 10 | $379,318 |
| 11 | N/A |
| 12 | $136,424 |

The Debtor reserves the right to object to any of the foregoing Claims.

The Debtor and his professionals estimate that Fee Claims will not exceed $30,000.00 in the event that the Plan is confirmed as proposed.

## ARTICLE IV
## GENERAL OVERVIEW OF THE PROPOSED
## PLAN OF REORGANIZATION

The Plan classifies claims and interests as follows:

| | |
|---|---|
| Class 1: | Allowed Secured Claims of Ad Valorem Taxing Authorities |
| Class 2: | Allowed Secured Claims of City National on the Homestead Property |
| Class 3: | Allowed Secured Claim of City National on property other than the Homestead Property |
| Class 4: | Allowed Secured Claim of Community Trust |
| Class 5: | Allowed Secured Claim of Ford |
| Class 6: | Allowed Secured Claim of Santander |
| Class 7: | Any Allowed Secured Claims of First Victoria |
| Class 8: | Any Allowed Secured Claims of Todd and Dawn Aaron |
| Class 9: | Any Allowed Secured Claims of Berkley Aviation |
| Class 10: | Any Allowed Secured Claims of Patriot Bank |
| Class 11A – 11Z: | Allowed Secured Claims not otherwise classified |
| Class 12 | Allowed General Unsecured Claims |
| Class 13 | Interests in the Debtor |

All Allowed Secured Claims are paid in full. Generally speaking, amounts due to holders of mortgage Liens secured by the Debtor's Homestead Property shall be reamortized over the existing term of such loans so as to provide equal monthly payments at the non-default interest rate provided under the promissory note executed by the Debtor in favor of such holders. Holders of Allowed Secured Claims secured by

equipment or vehicles shall be paid under the terms of a Plan Secured Note issued to such holders under the Plan. Ad Valorem Taxing Authorities are paid in forty-eight (48) equal monthly payments beginning on the Effective Date with interest at 1% per month. Other holders of Allowed Secured Claims are paid over a term of years, not to exceed seven (7). All holders of Allowed Secured Claims retain their Liens until their Allowed Secured Claims are paid. The holder of the Class 10 Claim receives a Plan Unsecured Note, and along with the holder of the Class 9 Claim, is deemed to release its Lien on the Effective Date.

Holders of Allowed Unsecured Claims are paid their Pro Rata Share of the Unsecured Creditors Pool, resulting in a distribution to General Unsecured Claims of approximately 2% (based on filed proofs of claim).

## ARTICLE V
## FINANCIAL INFORMATION AND FEASIBILITY

The ability of the Debtor to successfully reorganize depends, in large part, upon the Debtor's continued employment at the Debtor's current salary or the ability of the Debtor to secure employment at a similar salary. As set forth in "**Exhibit B**", the Reorganized Debtor's projected income and expenses allows him to make the payments to holders of Allowed Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 10, 11 and 12 set forth therein.

THE REORGANIZED DEBTOR'S PROJECTED FINANCIAL INFORMATION AND OTHER FORWARD–LOOKING STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE BASED ON VARIOUS ASSUMPTIONS AND ESTIMATES AND WILL NOT BE UPDATED TO REFLECT EVENTS OCCURRING AFTER THE DATE HEREOF. SUCH INFORMATION AND STATEMENTS ARE SUBJECT TO INHERENT UNCERTAINTIES AND TO A WIDE VARIETY OF SIGNIFICANT RISKS INCLUDING, AMONG OTHERS, THOSE DESCRIBED HEREIN. CONSEQUENTLY, ACTUAL EVENTS, CIRCUMSTANCES, EFFECTS AND RESULTS MAY VARY SIGNIFICANTLY FROM THOSE INCLUDED IN OR CONTEMPLATED BY SUCH PROJECTED FINANCIAL INFORMATION AND SUCH OTHER FORWARD–LOOKING STATEMENTS.

## ARTICLE VI
## CERTAIN RISK FACTORS

The Plan is subject to a number of material risks, including those enumerated below. Prior to deciding how to vote on the Plan, each holder of an impaired Claim should carefully consider all of the information contained in this Disclosure Statement, especially the factors mentioned in the following paragraphs:

- **Dependence on Key Individual** – The payments under the Plan are completely dependant upon the Debtor.  If the Debtor is unable to continue his employment, payments under the Plan will be jeopardized.

- **Forward-Looking Information May Prove Inaccurate** – This Disclosure Statement contains various forward-looking statements and information that are based on the Debtor's beliefs as well as assumptions made by and information currently available to the Debtor – particularly the Debtor's estimates of his income and expenses (and applicable tax rates). If reality varies from these beliefs and assumptions, actual results may vary materially from those anticipated, estimated or projected.

<div align="center">

ARTICLE VII
**ALTERNATIVES TO THE PLAN/LIQUIDATION ANALYSIS**

</div>

Section 1129 of the Bankruptcy Code provides that the Court may confirm a plan of reorganization only if certain requirements are met.  One of these requirements is that each non-accepting holder of an allowed Claim must receive or retain under the Plan, on account of such Claim, property as of the Effective Date of the Plan at least equal to the value such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

If the Debtor were liquidated on the Effective Date, the Debtor submits that creditors would realize no distribution since a chapter 7 trustee would not administer the Debtor's non-Exempt Property and would recover nothing under Chapter 5 of the Bankruptcy Code.

<div align="center">

ARTICLE VIII
**BANKRUPTCY CAUSES OF ACTION**

</div>

Pursuant to the Bankruptcy Code, a debtor may recover certain fraudulent or preferential transfers of property.  The Debtor reserves all rights to pursue, in his sole discretion, any preference, fraudulent conveyance, other avoidance, affirmative recovery not arising under the Bankruptcy Code, or suit to enforce the terms of this Plan to the full extent allowed under the Bankruptcy Code and applicable state laws.

<div align="center">

ARTICLE IX
**SELECT OTHER PROVISIONS OF THE PLAN**

</div>

### IX.1   *Vesting of Assets*

The Plan provides that on the Effective Date, (i) the property of the estate of the Debtor, including but not limited to any rights or causes of action, whether under the

Bankruptcy Code or other applicable law, shall vest in the Reorganized Debtor and the Debtor's non-filing spouse as joint management community property, subject to those Claims, Liens, and encumbrances as Allowed and restructured in this Plan and as specified in the Plan.

### IX.2 *Assumption of Liabilities*

The Plan provides that the liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

### IX.3 *Claims on File; No Allowance of Untimely Claims*

The Plan provides that the Debtor is relying on the formal proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal proof of Claim shall be deemed to have been filed in this Chapter 11 Case.

### IX.4 **Discharge**

The Plan provides that the Court shall grant the Debtor a discharge on [i] completion of all payments under the Plan or [ii] after notice and a hearing, if [a] the value as of the Effective Date of property actually distributed under the Plan on account of each Allowed Unsecured Claim is not less than the amount that would have been paid on such Claim if the estate of the Debtor had been liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date; [b] modification of the Plan under Section 1127 of the Bankruptcy Code is not practicable; and [c] the requirements of Section 1141(d)(5)(C) of the Bankruptcy Code are met. Such discharge shall apply as to all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or any of his assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [a] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [b] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [c] the holder of a Claim has accepted the Plan. As provided in section 524 of the Bankruptcy Code, entry of the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of his property, to the extent it relates to a Claim discharged.

### IX.5  *Injunctions*

The Plan provides that the Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided therein. Without limiting the generality of the foregoing, such injunction shall include an absolute prohibition from collecting Claims in any manner other than as provided for in the Plan.

**THE PLAN FURTHER PROVIDES THAT THE CONFIRMATION ORDER SHALL CONSTITUTE AND PROVIDE FOR A TEMPORARY INJUNCTION, AS OF THE EFFECTIVE DATE, AGAINST THE COMMENCEMENT OR CONTINUATION OF ANY ACTION OR PROCEEDING TO RECOVER ON ANY ALLOWED SECURED CLAIM AGAINST A PROTECTED PARTY, SO LONG AS THE REORGANIZED DEBTOR IS NOT IN DEFAULT OF THE PAYMENT TERMS PROVIDED SUCH CLAIM AS SET FORTH IN THE PLAN. THE INJUNCTION SHALL BECOME A PERMANENT INJUNCTION AS TO ALLOWED SECURED CLAIMS UPON PAYMENT IN FULL OF SUCH ALLOWED SECURED CLAIM AS SET FORTH IN THE PLAN.**

### IX.6  *Payment of Statutory Fees*

The Plan provides that the Reorganized Debtor shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) until the clerk of the Bankruptcy Court closes the Case. The Reorganized Debtor shall file with the Court and serve upon the U.S. Trustee a quarterly financial report for each quarter (or portion thereof) that the Case remains open in a format prescribed by the U.S. Trustee.

### IX.7  *Binding Effect*

The Plan provides that the Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed (i) to constitute a waiver or release of any Claims by the Debtor or any other Person, (ii) to prejudice in any manner the rights of the Debtor, or any other Person, or (iii) to constitute any admission by the Debtor or any other Person.

### IX.8  *Post-Effective Date Fees and Expenses of Professional Persons*

Except as provided in the Plan, after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Debtor, and the United States Trustee, by the Professional

Person seeking fees and expense reimbursement and provided, further, however, that the Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so. In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout this Case.

### IX.9 *Bankruptcy Restrictions*

The Plan provides that from and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code (e.g., section 363 or 364). The Reorganized Debtor may conduct his affairs in such manner as is consistent with individuals not in bankruptcy without the need of seeking Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

### IX.10 *Disallowance and Subordination of Subordinated Claims and Penalty Claims*

The Plan provides that the filing of the Plan and its submission to the holders of Subordinated Claims and Penalty Claims constitutes an action seeking to subordinate all Subordinated Claims and Penalty Claims pursuant to section 510 of the Bankruptcy Code. The Confirmation Order, except as otherwise provided therein or in the Plan, shall constitute an order subordinating such Claims to all other Claims pursuant to section 510 of the Bankruptcy Code.

### IX.11 *Governing Law*

The Plan provides that unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Case, except as may otherwise be provided in such agreements, documents and instruments.

### IX.12 *Modification of Plan*

The Plan provides that modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that (a) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Debtor has complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that (i) the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, (ii) the Bankruptcy

Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and (iii) the circumstances warrant such modifications. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### IX.13 *Creditor Defaults*

The Plan provides any act or omission by a creditor in contravention of a provision within the Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or (b) make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed. Upon the payment in full of any Allowed Secured Claim as provided under this Plan, the holder of such Allowed Secured Claim shall execute, deliver and file a release of all liens and security interests securing its Allowed Secured Claim within forty-five (45) days of such payment and in the event it fails to do so, shall, as liquidated damages, pay to the Debtor a sum in cash equal to the greater of $3,000 or the Debtor's actual costs of enforcing this provision.

### IX.14 *Debtor's Default*

The Plan provides in the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred, such creditor must provide the Reorganized Debtor with written notice ("Notice") of such default to the following address: 4694 FM 2869, Winnsboro, Texas 75494 via overnight mail or similar same-day or express delivery. If the default asserted in the Notice remains uncured on the fifteenth (15th) day from the date on which such Notice is sent, the holder of such Allowed Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### IX.15 Closing and Reopening the Case

The Case shall be closed promptly after the Effective Date and shall not be subject to reopening except [i] to modify the Plan in accordance with section 1127[e] of the Bankruptcy Code; [ii] on the request of the Debtor, for cause shown.

Case 13-33404-hdh11 Doc 138 Filed 06/10/14 Entered 06/10/14 16:51:05 Page 16 of 42

### IX.16 Valuation of Excess Homestead Acreage

Confirmation of the Plan shall constitute a valuation by the Bankruptcy Court that the non-Exempt portion of the Homestead Property is less than or equal to $134,000.00.

<div align="center">

### ARTICLE X
### FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

</div>

### X.1 *In General*

The Debtor does not anticipate that he will have any taxable income as a result of debt forgiveness since the debt forgiveness, if any, is being realized pursuant to a Title 11 proceeding.

### X.2 *Tax Consequences to Creditors*

BECAUSE THE FINAL OUTCOME DEPENDS SO MUCH ON EACH INDIVIDUAL CLAIMANT'S SITUATION, IT IS IMPERATIVE THAT EACH CLAIMANT SEEK INDIVIDUAL TAX COUNSEL FOR ADVICE ON HIS PARTICULAR SITUATION.

<div align="center">

### ARTICLE XI
### REQUIREMENTS FOR CONFIRMATION OF THE PLAN

</div>

### XI.1 *General Confirmation Requirements*

At the Confirmation Hearing, the Court will determine whether the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. If those requirements have been satisfied, the Court will enter the Confirmation Order. The requirements for confirmation under the Bankruptcy Code are as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.

- The proponent of the Plan has complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised by the proponent of the Plan or by a person issuing securities or acquiring Property under the Plan, for services or for costs and expenses in, or in connection with, the Case, or in connection with the Plan and incident to the Case, was disclosed to the Court, and any such payment made before confirmation of the Plan is

DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION                                         PAGE 16

reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Court as reasonable.

- With respect to each class of impaired Claims, either each holder of a Claim in such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount such Claimant would receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code.

- Subject to the Plan proponent's "cramdown" right described in Section 16.2 which follows, each class of Claims has either accepted the Plan or is not impaired under the Plan.

- Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that administrative expense Claims will be paid in Cash in full on the Effective Date and that any tax Claim entitled to priority under section 507(a)(7) is being paid in full in deferred cash payments, over a period not exceeding six years after the date of assessment of such Claim, of a value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim.

- At least one impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

- Confirmation of the Plan is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtor believes that the confirmation requirements applicable to the Case are met under the Plan. The Debtor will present evidence in support of each applicable requirement at the Confirmation Hearing.

### XI.2  *Potential Cramdown of the Plan*

If any impaired class of Claims does not vote to accept the Plan, the Court may nevertheless confirm the Plan pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code.  If the Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" to each Class of dissenting Creditors, the Court may confirm the Plan through "cramdown."  The Plan will not discriminate unfairly if no class receives more than it is legally entitled to receive.

With respect to each dissenting class of Unsecured Claims, "fair and equitable" means either: (i) the members of each dissenting impaired class of Unsecured Claims receive property of a value, as of the Effective Date of the Plan, equal to the amount of their Allowed Claim; or (ii) the holders of Claims and Interests that are junior to each dissenting impaired class of Unsecured Claims will not receive any property under the Plan an account of their junior Claim or Interest. A plan is not fair and equitable to a class of interests if any class of claims is paid more than in full.

## ARTICLE XII
### CONCLUSION

Through confirmation of the Plan, the Debtor believes that he can resolve all claims that have been, or could be, asserted against him in a timely and cost effective manner. The Debtor believes that the Plan provides a mechanism to resolve and provide just compensation to all claimants. The Debtor believes that the Plan is fair to all parties-in-interest and should be approved by creditors.

**THE DEBTOR URGES YOU TO VOTE TO ACCEPT THE PLAN.**

*/s/ Gary R. Griffith*
Gary R. Griffith

*/s/Howard Marc Spector*
Howard Marc Spector
TBA #00785023
Spector & Johnson, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
EMAIL: hspector@spectorjohnson.com

COUNSEL FOR GARY R. GRIFFITH

# EXHIBITS

Exhibit A    Debtor's Second Amended Plan of Reorganization

Exhibit B    Monthly Budget and Plan Payment Information for the Debtor

Howard Marc Spector
TBA #00785023
Spector & Johnson PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380
EMAIL: hspector@spectorjohnson.com

COUNSEL FOR GARY R. GRIFFITH

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | Case No. 13-33404-HDH-11 |
| Gary R. Griffith | § | |
| | § | |
| Debtor. | § | (Chapter 11) |

---

Second Amended Plan of Reorganization
Filed by the Debtor
Dated: May 28, 2014
Winnsboro, Texas

---

Case 13-33404-hdh11 Doc 133 Filed 05/28/14 Entered 05/28/14 16:31:10 Page 2 of 22

The Debtor, as debtor-in-possession proposes this Second Amended Plan of Reorganization under chapter 11 of the Bankruptcy Code.

<div align="center">

**ARTICLE 1: DEFINITIONS AND INTERPRETATION**

</div>

**1.1    *Definitions***

The capitalized terms used herein shall have the respective meanings set forth below:

(a)    "**Ad Valorem Taxing Authority**" shall mean any governmental entity entitled by law to assess taxes on property based upon the value of such property and to take a statutory Lien senior to Liens filed of record to secure the payment of such taxes and interest accruing thereon.

(b)    "**Administrative Claim**" shall mean a Claim entitled to priority under sections 503[b] and 507[a][1] of the Bankruptcy Code in the Case of the Debtor.

(c)    "**Allowed**" when used with respect to any Claim, except for a Claim that is an Administrative Claim, shall mean [1] such Claim to the extent it is not a Contested Claim; [2] such Claim to the extent it may be set forth pursuant to any stipulation or agreement that has been approved by Final Order; or [3] a Contested Claim, proof of which was filed timely with the Bankruptcy Court and [A] as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or [B] as to which an objection was filed by the Objection Deadline, to the extent Allowed by Final Order.

(d)    "**Ballot**" shall mean the Ballot to be used by creditors to cast their votes to accept or reject the Plan.

(e)    "**Balloting Agent**" shall mean Howard Marc Spector, as agent for the Debtor.

(f)    "**Bankruptcy Code**" shall mean the Bankruptcy Reform Act of 1978, as amended, and codified at title 11 of the United States Code.

(g)    "**Bankruptcy Court**" shall mean the Bankruptcy Court unit of the United States District Court for the Northern District of Texas, or such other court having jurisdiction over the Case.

(h)    "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code.

(i)    "**Business Day**" shall mean any day on which commercial banks are open for business in Dallas, Texas.

(j)    "**Case**" shall mean the bankruptcy case of the Debtor commenced under the Bankruptcy Code.

(k)    "**Cash**" shall mean legal tender of the United States of America or short-term liquid investments that are readily convertible to known amounts of legal tender of the United States of America and which present an insignificant risk of changes in value.

(l)    "**City National**" shall mean The City National Bank.

(m)    **"Collateral"** shall mean any property of the Debtor subject to a valid, enforceable and non-avoidable Lien to secure the payment of a Claim.

(n)    **"Community Trust"** shall mean Community Trust Bank.

(o)    **"Confirmation Date"** shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

(p)    **"Confirmation Hearing"** shall mean the date on which the Bankruptcy Court holds the hearing[s] on confirmation of the Plan.

(q)    **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan.

(r)    **"Contested,"** when used with respect to a Claim, shall mean a Claim against the Debtor [1] that is listed in the Debtor's Schedules as disputed, contingent or unliquidated; [2] that is listed in the Debtor's Schedules as undisputed, liquidated and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; and [3] that is not listed in the Debtor's Schedules, but as to which a proof of Claim has been filed with the Bankruptcy Court and to which an objection has been filed. Notwithstanding the foregoing, after the Objection Deadline, only Claims to which an Objection has been filed shall be deemed Contested Claims.

(s)    **"Contracts"** shall mean all executory contracts and unexpired leases as such terms are used within Bankruptcy Code section 365 to which the Debtor was a party as of the Petition Date, as the case may be.

(t)    **"Cure Payment"** shall be the monetary payments required pursuant to Bankruptcy Code section 365[b][1][A] to cure defaults under Contracts to which the Debtor is a party and which will be assumed pursuant to the Plan. Such Cure Payment shall be conclusively determined and set for each such Contract at the Confirmation Hearing.

(u)    **"Debtor"** shall mean Gary R. Griffith.

(v)    **"Deed of Trust"** shall mean that certain Deed of Trust dated February 17, 2011 executed by the Debtor with respect to the Homestead Property, and of which City National is the beneficiary.

(w)    **"Disallowed,"** when used with respect to a Claim, shall mean a Claim that has been disallowed by Final Order.

(x)    **"Disputed Claim Reserve"** shall mean the reserve accounts established pursuant to this Plan for funding Disputed Claims if such Claims are ultimately allowed by Final Order and which are to be held pending resolution of Disputed Claims by the entry of a Final Order allowing or disallowing such Disputed Claim[s].

(y)    **"Effective Date"** shall mean a Business Day selected by the Debtor or Reorganized Debtor, as the case may be, occurring within thirty [30] days of the first Business Day on which the Confirmation Order becomes a Final Order.

(z)    **"Estimated Amount"** means the maximum amount at which the Bankruptcy Court or, where required by applicable law, the District Court, estimates any Claim [or class of Claims] against the Debtor which is contingent, unliquidated or disputed, including, for the purpose of: [a] distribution under § 502[c], Bankruptcy Code; [b] determining the feasibility of this Plan pursuant

Case 13-33404-hdh11 Doc 133 Filed 05/28/14 Entered 05/28/14 16:51:10 Page 4 of 22

to § 1129[a][11], Bankruptcy Code for purposes of its Confirmation; or [c] voting to accept or reject this Plan pursuant to Bankruptcy Rule 3018[a].

(aa) **"Estimation Order"** means an Order of the Bankruptcy Court or, where required by applicable law, the District Court, that determines the Estimated Amount of any Claim [or class of Claims], against the Debtor for any of the purposes as provided in this Plan.

(bb) **"Exempt Property"** shall mean that property listed on Schedule C of a Schedule as it has or may be amended from time to time; provided however that Exempt Property shall not include any property determined to be non-exempt pursuant to Bankruptcy Rule 4003.

(cc) **"Fee Application"** shall mean an application of a Professional Person under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(dd) **"Fee Claim"** shall mean a Claim under section 330 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Case.

(ee) **"Final Order"** shall mean an order which has been entered and [1] as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or [2] in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order.

(ff) **"First Victoria"** shall mean First Victoria National Bank.

(gg) **"Ford"** shall mean Ford Motor Credit.

(hh) **"General Unsecured Claim"** shall mean any Claim against the Debtor that is not a Secured Claim, a Class 9 or 10 Claim, an Administrative Claim, or a Priority Tax Claim.

(ii) **"Homestead Property"** shall mean the real property and improvements located at 4694 FM 2869, Winnsboro, Texas.

(jj) **"Objection Deadline"** shall mean the date by which objections to Claims shall be filed with the Bankruptcy Court and served upon the respective holders of each of the Claims as provided in Section 9.1 of the Plan.

(kk) **"Penalty Claims"** shall mean Claims for penalties or punitive damages, including Claims denominated as "interest" which the Bankruptcy Court determines to be punitive in nature.

(ll) **"Petition Date"** shall mean July 2, 2013.

(mm) **"Plan"** or **"Plan of Reorganization"** shall mean this Second Amended Plan of Reorganization, either in its present form or as it may hereafter be altered, amended or modified from time to time.

(nn) **"Plan Secured Note"** shall mean a promissory note made payable by the Reorganized Debtor to the holder of certain Allowed Secured Claims in equal monthly installments

of principal and interest beginning on the Effective Date, and which incorporate the following material financial terms:

| Class | Annual Interest Rate | Principal Amount | Note Term | Amortization Term |
|---|---|---|---|---|
| 3 | 6% | Allowed Class 3 Claim ($40,000) | 5 years | 5 years |
| 4 | 6% | Allowed Class 4 Claim (Approximately $37,500) | 4.5 years | 4.5 years |
| 5 | 6% | Allowed Class 5 Claim (Approximately $32,400) | 5 years | 5 years |
| 6 | 6% | Allowed Class 6 Claim (Approximately $27,000) | 5 years | 5 years |
| 7 | 0% | Allowed Class 7 Claim ($36,000) | 7 years | 7 years |
| 8 | 6% | Allowed Class 8 Claim (Approximately $96,586) | 7 years | 7 years |

(oo)    **"Plan Unsecured Note"** shall mean a promissory note made payable by the Reorganized Debtor to the holder of the Allowed Class 10 Claim in equal monthly installments of $500.00 beginning on the Effective Date.

(pp)    **"Priority Tax Claim"** shall mean a Claim of a governmental unit of the kind specified in section 507[a][8] of the Bankruptcy Code, specifically including but not limited to claims for tax years ending on or before the Petition Date.

(qq)    **"Professional Person"** shall mean a person retained or to be compensated pursuant to section 327, 328, 330, 503[b] or 1103 of the Bankruptcy Code.

(rr)    **"Pro Rata Share"** shall mean the proportion that the amount of an Allowed Claim in a particular class, subclass or group of Claims bears to the aggregate amount of all Claims in such class, subclass or group of Claims, including Contested Claims, but not including Disallowed Claims.

(ss)    **"Protected Party"** shall mean any co-debtor, co-maker, responsible person or guarantor that otherwise would be jointly or severally liable for payment of a Claim against the Debtor.

(tt)    **"Reorganized Debtor"** shall mean the Debtor, as reorganized, on and after the Effective Date.

(uu)    **"Santander"** shall mean Santander Consumer Credit.

(vv)    **"Schedules"** shall mean the Schedules of assets and liabilities and the statements of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and statements have been or may be supplemented or amended.

(ww)    **"Secured Claim"** shall mean a Claim secured by a Lien on property of the Debtor, which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Case, but only to the extent of the value of the Collateral that secures payment of such Claim.

(xx)    **"Subordinated Claim"** shall mean any Claim [1] subordinated by contract or by order of the Bankruptcy Court to the right of payment of General Unsecured Claims and [2] any Penalty Claim.

(yy)    **"Unsecured Claim"** shall mean a Claim other than a Secured Claim.

(zz)    **"Unsecured Creditors Pool"** shall mean a fund maintained and funded by the Debtor. The Debtor shall pay $125 per month for a period of five (5) years from the Effective Date so as to completely fund the Unsecured Creditors' Pool.

(aaa)    **"Voting Deadline"** shall mean the date set by the Bankruptcy Court by which Ballots for accepting or rejecting the Plan must be received by the Balloting Agent.

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meaning when used in the Plan, unless a different definition is given in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.2    *Interpretation***

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of or exhibit to the Plan, as the same may be amended, waived or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

**1.3    *Reorganized Debtor***

The Plan shall be liberally construed for the benefit of the Debtor and Reorganized Debtor regarding the interchangeableness of the term *"Debtor"* with the term *"Reorganized Debtor"* and other instances of the use *"Reorganized."*

Case 13-33404-hdh11 Doc 133 Filed 05/28/14 Entered 05/28/14 16:31:16 Page 7 of 22

## ARTICLE 2: CLASSIFICATION OF CLAIMS

### 2.1    *Claims Classified*

For purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims [except for Administrative Claims] shall be classified as set forth in this Article 2 of the Plan.

### 2.2    *Administrative Claims*

Administrative Claims against the Debtor shall not be classified for purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be treated separately on the terms set forth in Article 5 of the Plan.

### 2.3    *Claims*

The Plan classifies the Claims against the Debtor as follows:

#### *Secured Claims*

| | | |
|---|---|---|
| [a] | Class 1: | Any Allowed Secured Claims of Ad Valorem Taxing Authorities. |
| [b] | Class 2: | Any Allowed Secured Claims of City National on the Homestead Property. |
| [c] | Class 3: | Any Allowed Secured Claims of City National on property other than the Homestead Property. |
| [d] | Class 4: | Any Allowed Secured Claims of Community Trust. |
| [e] | Class 5: | Any Allowed Secured Claims of Ford. |
| [f] | Class 6: | Any Allowed Secured Claims of Santander. |
| [g] | Class 7: | Any Allowed Secured Claims of First Victoria. |
| [h] | Class 8: | Any Allowed Secured Claims of Todd and Dawn Aaron. |
| [i] | Class 9: | Any Allowed Secured Claims of Berkley Aviation. |
| [j] | Class 10: | Any Allowed Secured Claims of Patriot Bank. |
| [k] | Class 11A--11Z: | Any Allowed Secured Claims not otherwise classified. |

#### *Unsecured Claims*

| | | |
|---|---|---|
| [l] | Class 12: | Any Allowed General Unsecured Claims. |

#### *Interests*

| | | |
|---|---|---|
| [m] | Class 13: | Interests of the Debtor. |

## ARTICLE 3: IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS

### 3.1    *Impaired Classes of Claims and Interests*

Classes 1 through 12 are impaired under the Plan.

### 3.2 *Impairment Controversies*

If a controversy arises as to whether any Claim or any class of Claims is impaired under the Plan, the Bankruptcy Court shall, upon notice and a hearing, determine such controversy.

### ARTICLE 4: PROVISIONS FOR TREATMENT OF CLAIMS UNDER THE PLAN

### 4.1 *Funding of Plan and Treatment of Claims*

The Debtor intends to pay Classes of Allowed Claims under the Plan as follows:

#### *Secured Claims*

[a]     *Class 1 – Any Allowed Secured Claims of Ad Valorem Taxing Authorities.* Ad Valorem Taxing Authorities' Claims shall to be paid in forty-eight [48] equal monthly payments beginning on the Effective Date with interest at 1% per month. All such Ad Valorem Taxing Authorities shall retain their Liens until their Class 1 Allowed Secured Claim is paid in full.

[b]     *Class 2 – Any Allowed Secured Claims of City National on the Homestead Property.* City National's Class 2 Allowed Secured Claim, shall be treated as a fully Secured Claim. City National shall receive payment pursuant to that Adjustable Rate Note dated February 17, 2011 save and except that the amount of the installment payment due from and after the Effective Date on the Adjustable Rate Note shall be calculated by reamortizing the balance owing on the Adjustable Rate Note as of the Effective Date over the remaining term of the Adjustable Rate Note at the non-default rate of 5.25% per year. Any amounts paid to City National by the Debtor prior to the Effective Date shall be applied first to  negative escrow, then to late fees and costs, then to interest, and lastly to principal. Any defaults occurring prior to the Confirmation Date shall be deemed cured upon entry of the Confirmation Order. City National shall retain its Liens securing its Class 2 Allowed Secured Claim as security for the payments due hereunder until the final payment is made on City National's Class 2 Allowed Secured Claim, at which time City National shall release its Liens. Notwithstanding the terms of the Deed of Trust, no Lien upon the Homestead Property shall be deemed a default of Deed of Trust so long as such Lien is provided for under the Plan and the Debtor is not in default of the terms of repayment of such Lien as provided in the Plan. Notwithstanding the terms of the Adjustable Rate Note dated February 17, 2011 and related loan documents, the Debtor shall pay the costs of insurance on the Homestead Property directly (in addition to the required insurance escrow under the Note) to the insurer through February 2016.

[c]     *Class 3 – Any Allowed Secured Claims of City National on property other than the Homestead Property.* Notwithstanding any order of the Bankruptcy Court modifying or terminating the automatic stay as to the holder of the Allowed Class 3 Secured Claim or its Collateral, unless the Collateral securing the Allowed Class 3 Secured Claim has been repossessed and disposed of prior to the Effective Date, the holder of the Allowed Class 3 Claim shall receive, in full and final satisfaction of its Allowed Class 3 Secured Claim, a Plan Secured Note, and the Debtor shall retain the Collateral securing the Allowed Class 3 Claim post-Effective Date. Such holder shall retain its Liens on all Collateral securing the Allowed Class 3 Secured Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note. Upon payment in full of the Plan Secured Note, the holder of the Allowed Class 3 Secured Claim shall release its Liens.

[d]    *Class 4 - Any Allowed Secured Claim of Community Trust*.  Notwithstanding any order of the Bankruptcy Court modifying or terminating the automatic stay as to the holder of the Allowed Class 4 Secured Claim or its Collateral, unless the Collateral securing the Allowed Class 4 Secured Claim has been repossessed and disposed of prior to the Effective Date, the holder of the Allowed Class 4 Claim shall receive, in full and final satisfaction of its Allowed Class 4 Secured Claim, a Plan Secured Note, and the Debtor shall retain the Collateral securing the Allowed Class 4 Claim post-Effective Date.  Such holder shall retain its Liens on all Collateral securing the Allowed Class 4 Secured Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note.  Upon payment in full of the Plan Secured Note, the holder of the Allowed Class 4 Secured Claim shall release its Liens.

[e]    *Class 5 - Any Allowed Secured Claim of Ford*.  Notwithstanding any order of the Bankruptcy Court modifying or terminating the automatic stay as to the holder of the Allowed Class 5 Secured Claim or its Collateral, unless the Collateral securing the Allowed Class 5 Secured Claim has been repossessed and disposed of prior to the Effective Date, the holder of the Allowed Class 5 Claim shall receive, in full and final satisfaction of its Allowed Class 5 Secured Claim, a Plan Secured Note, and the Debtor shall retain the Collateral securing the Allowed Class 5 Claim post-Effective Date.  Such holder shall retain its Liens on all Collateral securing the Allowed Class 5 Secured Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note.  Upon payment in full of the Plan Secured Note, the holder of the Allowed Class 5 Secured Claim shall release its Liens.

[f]    *Class 6 - Any Allowed Secured Claim of Santander*.  Notwithstanding any order of the Bankruptcy Court modifying or terminating the automatic stay as to the holder of the Allowed Class6  Secured Claim or its Collateral, unless the Collateral securing the Allowed Class 6 Secured Claim has been repossessed and disposed of prior to the Effective Date, the holder of the Allowed Class 6 Claim shall receive, in full and final satisfaction of its Allowed Class 6 Secured Claim, a Plan Secured Note, and the Debtor shall retain the Collateral securing the Allowed Class 6 Claim post-Effective Date.  Such holder shall retain its Liens on all Collateral securing the Allowed Class 6 Secured Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note.  Upon payment in full of the Plan Secured Note, the holder of the Allowed Class 6 Secured Claim shall release its Liens.

[g]    *Class 7 - Any Allowed Secured Claims of First Victoria*. In full and final satisfaction of its Class 7 Allowed Secured Claim, the holder of the Allowed Class 7 Secured Claim shall receive a Plan Secured Note in the amount of $35,054.00.  Such holder shall retain its Liens on all Collateral securing the Allowed Class 7 Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note.  Upon payment in full of the Plan Secured Note, the holder of the Allowed Class 7 Claim shall release its Liens.  Treatment under this provision shall not impair the Debtor's right to designate pursuant to Chapter 41 of the Texas Property Code.

[h]    *Class 8 - Any Allowed Secured Claims of Todd and Dawn Aaron*.  In full and final satisfaction of their Class 8 Allowed Secured Claim, the holders of the Allowed Class 8 Secured Claim shall receive a Plan Secured Note in the amount of $98,897.14.  Such holders shall retain their Liens on all Collateral securing the Allowed Class 8 Claim as they exist on the Confirmation Date to secure repayment of the Plan Secured Note.  Upon payment in full of the Plan Secured Note, the holders of the Allowed Class 8 Claim shall release their Liens.  Treatment under this

provision shall not impair the Debtor's right to designate pursuant to Chapter 41 of the Texas Property Code.

[i] *Class 9 - Any Allowed Secured Claims of Berkley Aviation.* Class 9 shall receive no distribution on account of its Class 9 Secured Claim. Entry of the Confirmation Order shall operate to release any Lien of the holder of the Class 9 Claim which was recorded within the ninety [90] days prior to the Petition Date, and all Claims of the holder of a Class 9 Claim shall be treated solely as a General Unsecured Claim.

[j] *Class 10 - Any Allowed Secured Claims of Patriot Bank.* Class 10 shall receive a Plan Unsecured Note on account of its Class 10 Secured Claim. Entry of the Confirmation Order shall operate to release any Lien of the holder of the Class 10 Claim which was recorded within the ninety [90] days prior to the Petition Date, and all Claims of the holder of the Class 10 Claim shall be treated solely as an Allowed Unsecured Claim.

[k] *Class 11A–11Z - Any Allowed Secured Claims not otherwise classified.* Each holder of a Allowed Secured Claim other than those classified in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, Class 7, Class 8, Class 9 or Class 10 shall receive on the Effective Date on account of its Class 11 Allowed Secured Claim at the Debtor's option, either [i] a Plan Secured Note on the same terms as holders of Allowed Class 5 Claims, except that the amount of such note shall be the amount of such holder's Allowed Class 11 Claim, which secured by such holder's existing Liens or other payments of Cash or non-Cash, in the amount of its Allowed Secured Claim, or [ii] the surrender to such holder of all Collateral securing such Allowed Secured Class 11 Claim in accordance with *In re Sandy Ridge Development Corp*, 881 F.2d 1346 [5th Cir. 1989], in which case such Class 11 Allowed Claim shall be deemed paid in full and fully satisfied and any deficiency thereon shall be treated as a General Unsecured Claim. Each holder of an Allowed Claim in Class 11 shall be separately classified into a subclass [*e.g.*, 11A, 11B]. Upon payment in full of any Plan Secured Note given to a holder of a Class 11 Claim, such holder shall release its Liens.

[l] Notwithstanding the foregoing treatment specified above, the Debtor may, at its option, provide any holder of a Allowed Claim in Class 1, Class 2, Class 3, Class 4, Class 5, Class 6, Class 7, Class 8, Class 9, or Class 10 or Class 11 treatment as provided under section 1124[2] or [3] of the Bankruptcy Code, with the Cash payments required by section 1124[2][A] and [C] of the Bankruptcy Code being made on the Effective Date; or [b] such holder's Collateral. If such holder of an Allowed Secured Claim against the Debtor receives treatment as provided in [a] above, such holder shall retain any Liens securing the Allowed Secured Claim until paid in full.

[m] Notwithstanding the foregoing, the Debtor and any holder of a Allowed Secured Claim may agree to any alternate treatment of such Secured Claim, which treatment shall include preservation of such holder's Lien; provided, however, that such treatment shall not provide a return to such holder of an amount having a present value in excess of the amount of such holder's Allowed Secured Claim. Each such agreement shall be presented to the Bankruptcy Court before or within 90 [ninety] days after the Effective Date and shall not materially and adversely impact the treatment of any other creditor under the Plan.

[n]    In order to effectuate the releases of certain Liens herein, the Debtor may record a certified copy of the Confirmation Order with a description of the Homestead Property in the official real property records of the county in which the Homestead Property is located.

### *Unsecured Claims*

[o]    *Class 12 – Any Allowed General Unsecured Claim.* Any holder of a General Unsecured Claims against the Debtor shall receive its Pro Rata Share of the Unsecured Creditors' Pool. Payments from the Unsecured Creditors' Pool will be distributed on a semi-annual basis to holders of Allowed General Unsecured Claims.

### *Interests*

[p]    *Class 13 – Interests of the Debtor.* The Debtor shall retain his interest in all Exempt Property and non-Exempt Property.

## ARTICLE 5 : PROVISIONS FOR TREATMENT OF UNCLASSIFIED CLAIMS UNDER THE PLAN

### 5.1    *Treatment of Administrative Claims and Priority Tax Claims*

Each holder of an Allowed Priority Tax Claim or Allowed Administrative Claim against the Debtor shall receive on the Effective Date one of the following [i] the amount of such holder's Allowed Claim in one Cash payment; or [ii] such other treatment as may be agreed upon in writing by the Debtor and such holder. Provided, however, that an Administrative Claim representing a liability incurred in the ordinary course of business may be paid in the ordinary course of business. Liens securing Administrative Claims held by Ad Valorem Taxing Authorities remain unaffected by this Plan.

### 5.2    *Procedure for Filing Administrative Claims*

Save and except Ad Valorem Taxing Authorities, the holder of an Administrative Claim [including Fee Claims] incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on all parties required to receive notice, notice of such Administrative Claim and, if applicable, a Fee Application within sixty [60] days after the Effective Date. Failure to file and serve these documents timely and properly shall result in the Administrative Claim being forever barred and discharged.

## ARTICLE 6: ACCEPTANCE OR REJECTION OF THE PLAN

### 6.1    *Classes Entitled to Vote*

Classes 1, 2, 3, 4, 5, 6, 7, 8, 10 , 11 and 12 shall be entitled to vote separately to accept or reject the Plan as provided in applicable Bankruptcy Court orders and the Bankruptcy Code. Class 9 does not vote since it is deemed to reject the Plan. Class 13 does not vote since it is deemed to accept the Plan.

### 6.2    *Class Acceptance Requirement*

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims in such class that have voted on the Plan.

### 6.3    *Cramdown*

If any class of Claims shall fail to accept the Plan in accordance with section 1126[c] of the Bankruptcy Code, the Bankruptcy Court may still confirm the Plan in accordance with section 1129[b] of the Bankruptcy Code. In the event that confirmation is requested under section 1129[b] of the Bankruptcy Code, the Debtor reserve the right to amend or otherwise modify the Plan to eliminate distributions to holders of any Claims junior to any class of Claims that is impaired under and has not accepted the Plan in accordance with section 1129[b][2] of the Bankruptcy Code.

### ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

### 7.1    *Vesting of Assets*

On the Effective Date, all real and personal property of the estate of the Debtor, including but not limited to all causes of action of the Debtor, and any avoidance actions of the Debtor, under applicable non bankruptcy law or the Bankruptcy Code, shall vest in the Reorganized Debtor and the Debtor's non-filing spouse as joint management community property and shall not be assertable by any party other than the Reorganized Debtor on behalf of his creditors subject to those Claims, Liens, and encumbrances as Allowed and restructured in this Plan and as specified herein.

### 7.2    *Assumption of Liabilities*

The liability for and obligations under the Plan shall be assumed by and become obligations of the Reorganized Debtor.

### 7.3    *Disputed Claims*

[a]    Establishment of Disputed Claims Reserve. Notwithstanding any other provision of this Plan, no assets or property shall be distributed under this Plan on account of any Disputed Claim. For all Disputed Claims, the Reorganized Debtor shall establish and hold, in trust, distributions to be made on account of Plan Unsecured Note payable to the holders of Disputed Claims [each such reserve being herein called a "Disputed Claims Reserve"] with respect to each Class 1, 2, 3, 4, 5, 6, 7, 8, 11 or 12 Claim for which there exists a Disputed Claim, and shall place in each Disputed Claims Reserve the assets and property to be distributed on account of such Disputed Claims pursuant to this Plan, pending Allowance or Disallowance of such Claim. Pending entry of a Final Order concerning a Disputed Claim, the Reorganized Debtor shall pay into the Disputed Claims Reserve all payments provided for under this Plan pursuant to any Allowed Claim which would have been required to be delivered to the claimant absent a Disputed Claim. Cash held in any Disputed Claims Reserve shall be held in a segregated interest-bearing trust account. To the extent practicable, the Reorganized Debtor may invest the Cash in any Disputed Claims Reserve in a manner that will yield a reasonable net return, taking into account the safety of the investment.

[b]    Determination of Disputed Claims Reserve. The Bankruptcy Court may, at any time, determine for each Class 1, 2, 3, 4, 5, 6, 7, 8, 11 or 12 Claim, the amount of assets and property sufficient to fund each Disputed Claims Reserve established with respect to any such class. The Bankruptcy Court may estimate and determine by an Estimation Order the Estimated Amount of Claims in each class for which a Disputed Claims Reserve has been established. Save and except Ad Valorem Taxing Authorities, any claimant holding a Disputed Claim so estimated will have recourse only to undistributed assets and property in the Disputed Claims Reserve for the class in which such Disputed Claim has been placed and not to the Reorganized Debtor or any other assets or property, should the Allowed Claim of such claimant, as finally determined by a Final Order, exceed such Estimated Amount.

[c]    Return of Assets. Except as otherwise provided herein, all assets and properties [and all interest payments and dividends previously paid in connection therewith] in any Disputed Claims Reserve for any class of Claims remaining after the resolution of all disputes relating thereto shall be returned to the appropriate Reorganized Debtor for distribution in accordance with this Plan.

[d]    Withholding of Taxes. The Reorganized Debtor shall withhold from any assets and property distributed under this Plan any assets and or property which must be withheld for federal, state and local taxes payable by the Entity entitled to such property to the extent required by applicable law.

### 7.4    *Estimated Claims*

Except as otherwise provided herein, the Court may estimate for purposes of allowance pursuant to § 502[c], Bankruptcy Code, [i] any Disputed Claim or unliquidated Claim, or [ii] any portion or part of an Claim that is, itself, unliquidated. Any Estimation Order, to the extent it becomes a Final Order, shall determine the amount of the Allowed Claim so estimated.

### 7.5    *Claims on File; No Allowance of Untimely Claims*

The Debtor is relying on the formal proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan.   No informal proof of claim shall be deemed to have been filed in this Case.

### 7.6    *Valuation of Excess Homestead Acreage*

Confirmation of the Plan shall constitute a valuation by the Bankruptcy Court that the non-Exempt portion of the Homestead Property is less than or equal to $134,000.00. The Debtor shall provide evidence of this valuation at the Confirmation Hearing.

## ARTICLE 8: PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1    *Distributions*

Any distributions and deliveries to be made under the Plan shall be made on the Effective Date, as funds are available, as otherwise provided for herein, or as the Bankruptcy Court may order.

### 8.2    *Delivery of Distributions*

Subject to Bankruptcy Rule 9010, distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders [or at the last known address of such a holder if no proof of Claim is filed or if the Debtor has been notified in writing of a change of address]. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtor is notified in writing of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Save and except with respect to Ad Valorem Taxing Authorities, after the first anniversary of the Effective Date, all unclaimed property shall revert to the Reorganized Debtor or any successor thereto, and the claim of any holder with respect to such property shall be discharged and forever barred.

### 8.3    *Time Bar to Cash Payments*

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not negotiated within six months after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Save and except with respect to Ad Valorem Taxing Authorities, any claim in respect of such a voided check shall be made on or before the later of [1] the first anniversary of the Effective Date or [2] 90 days after the date of reissuance of such check. After such date, all claims in respect of void checks shall be discharged and forever barred.

## ARTICLE 9:
## PROCEDURES FOR RESOLVING AND TREATING CONTESTED AND DISPUTED CLAIMS UNDER THE PLAN

### 9.1    *Objection Deadline*

As soon as practicable, but in no event later than sixty [60] days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of each of the Claims to which objections are made. Notwithstanding the foregoing sentence, as to any Claim which is filed after the Effective Date, an objection to such Claim shall be filed on or before sixty [60] days after the date on which such Claim is filed.

### 9.2 *Prosecution of Objections*

On and after the Effective Date, except as the Bankruptcy Court may otherwise order, the filing, litigation, settlement or withdrawal of all claim objections may be made by the Reorganized Debtor.

### 9.3 *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim, except with respect to Ad Valorem Taxing Authorities, in which case the Debtor shall pay the undisputed portion of any Contested Claim of an Ad Valorem Taxing Authority. Payments and distributions to each holder of a Contested Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the class of Claims to which the respective holder belongs.

<div align="center">

**ARTICLE 10:**
**PROVISIONS GOVERNING EXECUTORY CONTRACTS AND**
**UNEXPIRED LEASES UNDER THE PLAN**

</div>

### 10.1 *Assumption or Non-Assumption of Certain Contracts*

This Plan constitutes a motion, pursuant to Bankruptcy Code § 365[a] to reject all Contracts, except those expressly assumed by the Debtor, in writing, at or prior to the Confirmation Hearing.

### 10.2 *Bar to Rejection Damages*

If the rejection of a Contract by the Debtor pursuant to this Plan results in damages to the other party or parties to such Contract, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, the Reorganized Debtor or his respective property or agents, successors or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before sixty [60] days following the Effective Date.

### 10.3 *Insurance Policies*

Notwithstanding anything in the Plan or Sections 10.1 and 10.2 of the Plan, all insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date. All payments upon such policies are current; no cure payments are necessary.

<div align="center">

**ARTICLE 11: RETENTION OF JURISDICTION**

</div>

### 11.1 *Scope of Jurisdiction*

Pursuant to sections 1334 and 157 of title 28 of the United States Code, until the time that an order is entered closing the Case, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under and related to the Case and the Plan. Without limitation, the Bankruptcy Court shall retain jurisdiction for the following specific purposes after the Confirmation of this Plan:

[a]   to modify this Plan pursuant to the Bankruptcy Rules and the Bankruptcy Code;

[b]   to enforce and interpret the terms and conditions of this Plan;

[c]   to enter such orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Reorganized Debtor;

[d]   to enter an order concluding and terminating the Case;

[e]   to correct any defect, cure any omission, or reconcile any inconsistency in this Plan, or the Confirmation Order as may be necessary, consistent with the requirements of the Bankruptcy Code and Bankruptcy Rules to carry out the purposes and intent of this Plan, including the adjustment of the date[s] of performance under this Plan in the event the Effective Date does not occur as provided herein, so that the intended effect of this Plan may be substantially realized thereby;

[f]   to approve all Fee Claims;

[g]   to hear and determine any causes of action arising prior to the Effective Date or thereafter or in any way related to this Plan or the transactions contemplated hereby against the Debtor;

[h]   to determine any and all applications pending on Confirmation for the rejection, assumption or assignment of Contracts and the allowance of any Claim resulting therefrom;

[i]   to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

[j]   to hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals;

[k]   to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

[l]   to hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, or Interest;

[m]   to enter and implement such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

[n]   to enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder;

[o]   to hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146, Bankruptcy Code;

[p]   to hear and determine claims of exemptions;

[q]   to enter a discharge of the Debtor;

[r]   to enforce orders of the Bankruptcy Court determining the status of Exempt Property; and

[s]   to determine claims under 11 U.S.C. § 506[c] against the holders of any Allowed Secured Claim.

Notwithstanding the foregoing, after the Effective Date, the Bankruptcy Court shall not retain jurisdiction to convert the Case to a proceeding under another chapter of the Bankruptcy Code.

## 11.2   *Failure of the Bankruptcy Court to Exercise Jurisdiction*

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under or related to the Case, including the matters set forth in Section 11.1 of the Plan, this Article 11 shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### ARTICLE 12: MISCELLANEOUS PROVISIONS

#### 12.1 *Setoff Rights*

In the event that the Debtor has a claim of any nature whatsoever, including but not limited to a 11 U.S.C. 506[c] claim, against the holder of a Claim, the Debtor may, but is not required to, setoff against the Claim [and any payments or other distributions to be made in respect of such Claim hereunder], subject to the provisions of section 553 of the Bankruptcy Code. Neither the failure to setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any claim that the Debtor may have against the holder of a Claim.

#### 12.2 *Discharge*

The Court shall grant a discharge on [i] completion of all payments under the Plan or [ii] after notice and a hearing, if [a] the value as of the Effective Date of property actually distributed under the Plan on account of each Allowed Unsecured Claim is not less than the amount that would have been paid on such Claim if the estate of the Debtor had been liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date; [b] modification of the Plan under Section 1127 of the Bankruptcy Code is not practicable; and [c] the requirements of Section 1141(d)(5)(C) of the Bankruptcy Code are met. Such discharge shall apply as to all existing debts and Claims of any kind, nature or description whatsoever against the Debtor or any of his assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, including but not limited to Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date and all debts of the kind specified in sections 502[g], 502[h] or 502[i] of the Bankruptcy Code, whether or not [x] a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; [y] a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code; or [z] the holder of a Claim has accepted the Plan. As provided in section 524 of the Bankruptcy Code, entry of the discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or any of his property, to the extent it relates to a Claim discharged. The order of the Bankruptcy Court discharging the Debtor shall constitute a judicial determination, of the discharge of all such Claims and other debts and liabilities of the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor, as reorganized, at any time, to the extent such judgment is related to a discharged Claim.

As of the Effective Date, except as provided in the Plan or the Confirmation Order, all holders of Claims against the Debtor shall be precluded from asserting against the Debtor, as reorganized, or his respective successors or property, any other of further Claims, debts, rights, causes of action, liabilities based upon any act, omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

### 12.3   *Injunctions*

The Confirmation Order shall contain such injunctions as may be necessary and helpful to effectuate the discharge of the Debtor provided herein. Without limiting the generality of the foregoing, such injunction shall include an absolute prohibition from collecting Claims or asserting control of property of the estate as it has revested in the Reorganized Debtor pursuant to Section 7.1 of the Plan in any manner other than as provided for in the Plan. Provided however, that parties to assumed Contracts shall not be enjoined from pursuing their rights and remedies under such Contracts and may exercise their rights and remedies in accordance with the terms and conditions of such Contract.

### 12.4   *Pre-Petition Date Lawsuits/Insurance*

On the Effective Date, lawsuits, litigations, administrative actions or other proceedings, judicial or administrative, in connection with the assertion of a Claim shall be dismissed as to the Reorganized Debtor; provided however, if an appeal or post judgment of any such matter is pending as of the Confirmation Date, the Claim shall be determined by the court[s] in which such case is pending; provided further that if such case is reversed or remanded to the trial court, the Claim shall be asserted and finally determined by the Bankruptcy Court.

Dismissals of proceedings provided herein shall be with prejudice to the assertion of such Claim in any manner other than as prescribed by the Plan. All parties to any such action shall be enjoined by the Bankruptcy Court in the Confirmation Order from taking any action to impede the immediate and unconditional dismissal of such actions. Confirmation and consummation of the Plan shall have no effect on insurance policies of the Debtor in which the Debtor are or were the insured party; the Reorganized Debtor shall become the insured party under any such policies. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Debtor's bankruptcy, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan.

### 12.5   *De Minimis Distributions*

No distribution of less than $25.00 shall be made to any holder of an Allowed Claim. Such undistributed amount will be retained by the Reorganized Debtor.

### 12.6   *Payment of Statutory Fees*

The Reorganized Debtor shall be responsible for the timely payment of fees incurred pursuant to 28 U.S.C. § 1930[a][6] until the clerk of the Bankruptcy Court closes the Case. The Reorganized Debtor shall file with the Court and serve upon the U.S. Trustee a quarterly financial report for each quarter [or portion thereof] that the Case remain open in a format prescribed by the U.S. Trustee.

**12.7** *Post-Effective Date Fees and Expenses of Professional Persons*

Except as provided in this Plan, after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtor, related to the implementation and consummation of the Plan, provided, however, that no such fees and expenses shall be paid except upon receipt by the Reorganized Debtor of a written invoice, which invoice shall also be served upon counsel for the Debtor, and the United States Trustee, by the Professional Person seeking fees and expense reimbursement and provided, further, however, that the Reorganized Debtor may, within 10 days after receipt of an invoice for fees and expenses, request the Bankruptcy Court to determine any such request and the Bankruptcy Court shall have jurisdiction to do so. In such event, the Bankruptcy Court shall apply the same standard for approval of fees and expenses as applied throughout the Case.

**12.8** *Bankruptcy Restrictions*

From and after the Effective Date, the Reorganized Debtor shall no longer be subject to the restrictions and controls provided by the Bankruptcy Code [*e.g.*, section 363 or 364]. The Reorganized Debtor may conduct his affairs in such manner as is consistent with Entities not in bankruptcy without the need of seeking Bankruptcy Court approval. No monthly operating reports will be filed after the Effective Date; however, the Reorganized Debtor shall provide the U.S. Trustee such financial reports as the U.S. Trustee may reasonably request until the entry of a final decree.

**12.9** *Binding Effect*

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and their respective successors and assigns; provided, however, that if the Plan is not confirmed, the Plan shall be deemed null and void and nothing contained herein shall be deemed [i] to constitute a waiver or release of any Claims by the Debtor, or any other Entity, [ii] to prejudice in any manner the rights of the Debtor, or any other Entity, or [iii] to constitute any admission by the Debtor, or any other Entity.

**12.10** *Governing Law*

Unless a rule of law or procedure is supplied by federal law [including the Bankruptcy Code and Bankruptcy Rules], the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan or the Case, except as may otherwise be provided in such agreements, documents and instruments.

### 12.11 *Modification of Plan*

Except as provided in section 1127(e) of the Bankruptcy Code, modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided that [a] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and [b] the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Plan may be modified at any time after the Confirmation Date and before substantial consummation by the Debtor, provided that [i] the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, [ii] the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code and [iii] the circumstances warrant such modifications.

The Plan may be modified after substantial consummation of the Plan in accordance with section 1127(e) of the Bankruptcy Code. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

### 12.12 *Closing and Reopening the Case*

The Case shall be closed promptly after the Effective Date and shall not be subject to reopening except [i] to modify the Plan in accordance with section 1127[e] of the Bankruptcy Code; [ii] on the request of the Debtor, for cause shown.

### 12.13 *Creditor Defaults*

Any act or omission by a creditor in contravention of a provision within this Plan shall be deemed an event of default under this Plan. Upon an event of default, the Reorganized Debtor may seek to hold the defaulting party in contempt of the Confirmation Order. If such creditor is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by a creditor, the Bankruptcy Court may [a] designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Federal Rule of Civil Procedure 70 or [b] make such other order as may be equitable which does not materially alter the terms of the Plan as confirmed. Save and except with respect to Ad Valorem Taxing Authorities, upon the payment in full of any Allowed Secured Claim as provided under this Plan, the holder of such Allowed Secured Claim shall execute, deliver and file a release of all liens and security interests securing its Allowed Secured Claim within forty-five [45] days of such payment and in the event it fails to do so, shall, as liquidated damages, pay to the Debtor a sum in cash equal to the greater of $3,000 or the Debtor's actual costs of enforcing this provision.

### 12.14 *Default by the Debtor*

In the event that the holder of an Allowed Claim asserts that a default under the Plan has occurred by the Debtor, such creditor must provide the Debtor with written notice ["Notice"] of such default to the following address: 4694 FM 2869, Winnsboro, Texas 75494 via overnight mail or similar same-day or express delivery. If the default asserted in the Notice remains uncured on the fifteenth [15th] day from the date on which such Notice is sent, the holder of such Allowed

Claim may pursue any rights or remedies it may have under applicable non-bankruptcy law, whether state, federal or otherwise.

### 12.15 *Severability*

SHOULD THE BANKRUPTCY COURT DETERMINE THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 12.11 OF THE PLAN SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY CLAIM. SUCH A DETERMINATION OF UNENFORCEABILITY SHALL NOT [1] LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN OR [2] REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

### 12.16 *Integration Clause*

This Plan is a complete, whole, and integrated statement of the binding agreement between the Debtor, creditors, and the parties-in-interest upon the matters herein.

### 12.17 *Exculpations*

Neither the Debtor, nor his agents or attorneys, shall have or incur any liability to any holder of a Claim for any act, event or omission in connection with, or arising out of, the Case, the confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

### 12.18 *Responsible Person/Co-Debtor Injunction*

**THE CONFIRMATION ORDER SHALL CONSTITUTE AND PROVIDE FOR A TEMPORARY INJUNCTION, AS OF THE EFFECTIVE DATE, AGAINST THE COMMENCEMENT OR CONTINUATION OF ANY ACTION OR PROCEEDING TO RECOVER ON ANY ALLOWED SECURED CLAIM AGAINST A PROTECTED PARTY, SO LONG AS THE REORGANIZED DEBTOR IS NOT IN DEFAULT OF THE PAYMENT TERMS PROVIDED SUCH CLAIM AS SET FORTH IN THIS PLAN. THE INJUNCTION SHALL BECOME A PERMANENT INJUNCTION AS TO ALLOWED SECURED CLAIMS UPON PAYMENT IN FULL OF SUCH ALLOWED SECURED CLAIM AS SET FORTH IN THIS PLAN.**

### 12.19 *Resolution of Exemption Contests*

Confirmation of the Plan shall resolve the Objections to Debtor's Claimed Exemptions [Docket No. 52] filed by Todd and Dawn Aaron, and First Victoria National Bank's Objection to Debtor's Claimed Exemptions [Docket No. 54].

Dated:  May 28, 2014.

<div style="margin-left: 50%;">

*/s/ Howard Marc Spector*
Howard Marc Spector
TBA #00785023
Spector & Johnson PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
[214] 365-5377
FAX: [214] 237-3380
EMAIL: hspector@spectorjohnson.com

COUNSEL FOR GARY R. GRIFFITH

</div>

Income

| | | |
|---|---|---:|
| Monthly gross wages, salary, and commissions | $ | 13,000.00 |
| Less Payroll Deductions | $ | (1,500.00) |
| Regular income from operation of business or profession or farm | $ | 4,750.00 |
| Pension or retirement income | $ | 3,300.00 |
| **COMBINED AVERAGE MONTHLY INCOME:** | $ | **19,550.00** |

Expenses

| | | |
|---|---|---:|
| Electricity and heating fuel | $ | (495.00) |
| Water and sewer | $ | (185.00) |
| Telephone | $ | (220.00) |
| Cable & internet | $ | (210.00) |
| Home maintenance | $ | (500.00) |
| Food | $ | (650.00) |
| Clothing | $ | (150.00) |
| Laundry and dry cleaning | $ | (100.00) |
| Medical and dental expenses | $ | (150.00) |
| Transportation | $ | (450.00) |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | (100.00) |
| Charitable contributions | $ | (25.00) |
| Homeowner's insurance | $ | (500.00) |
| Auto insurance | $ | (125.00) |
| Regular expenses from operation of business, profession, or farm | $ | (3,000.00) |
| **COMBINED AVERAGE MONTHLY EXPENSES:** | $ | **(6,860.00)** |

Plan Payments

| | | |
|---|---|---:|
| Class 1 - Ad Valorem Taxes | $ | (25.00) |
| Class 2 - City National Homestead Payments | $ | (7,300.00) |
| Class 3 - City National Equipment Payments | $ | (773.31) |
| Class 4 - Community Trust Equipment Payments | $ | (794.13) |
| Class 5 - Ford Vehicle Payments | $ | (626.38) |
| Class 6 - Santander Vehicle Payments | $ | (521.99) |
| Class 7 - Judgment Lien of First Victoria | $ | (428.57) |
| Class 8 - Judgment Lien of Todd and Dawn Aaron | $ | (1,410.98) |
| Class 10 - Unsecured Claim of Patriot Bank | $ | (500.00) |
| Class 11 - General Unsecured Claims | $ | (125.00) |
| **COMBINED AVERAGE MONTHLY PLAN PAYMENTS:** | $ | **(12,505.36)** |

"EXHIBIT B"